# In Re Frederick J. Fayette

[ 253 A.2d 129 ]

February Term, 1969

Present: **Holden, C.J., Shangraw, Barney, Keyser, JJ., and Daley, C. Supr. J.**

Opinion Filed April 1, 1969

*James M. Jeffords,* Attorney General, and *Louis P. Peck,* Assistant Attorney General, for the State.

*Donald E. O'Brien, Esq.,* and *Frederic W. Allen, Esq.,* for the Defendant.

**Per Curiam.** These disciplinary proceedings were instituted in November 1968 in the aftermath of a federal prosecution. The presentment by the attorney general charges the respondent was convicted, after a trial by jury in the United States District Court for the District of Vermont, of the offense of receiving $3,000 as a political contribution and for personal emolument in consideration of promised support of one Handy to the office of postmaster of St. Johnsbury, Vermont. There is no dispute about the facts; they were stipulated.

The respondent has been a prominent member of the bar since his admission in 1937. He has had a distinguished record of public service in positions of responsibility in state and federal offices and on the boards of numerous charitable enterprises.

The respondent was charged with a violation of the following provisions of Title 18, United States Code §211:

Whoever solicits or receives, either as a political contribution, or for personal emolument, any money or thing of value, in consideration of the promise of support or use of influence in obtaining for any person any appointive office or place under the United States, shall be fined not more than $1,000 or imprisoned not more than one year, or both.

He pleaded not guilty to the charge, Although his conviction was affirmed in *United States* v. *Fayette,* 2 Cir., 388 F.2d 728, 729, he has maintained his innocence throughout. The assistant attorney general, representing the complainant, has stipulated—"the State is satisfied that Mr. Fayette was convicted of the receipt of money as a political contribution and not for personal emolument." The record reports that the respondent was fined three hundred dollars for his offense.

The matter was considered by the professional conduct committee of the Vermont Bar Association soon after the conviction was affirmed on appeal. In view of the respondent's thirty-one years of good standing as a practitioner, the political implications in the offense and the serious consequences which had already been visited upon the respondent, the committee recommended to the attorney general that discipline beyond a reprimand would be inappropriate and unduly harsh. Consistent with the then prevailing policy, the attorney general accepted the committee's report without further action.

Following the decision of this Court on August 9, 1968 in *In re Calhoun,* 127 Vt. 220, 245 A.2d 560 and *In re Knapp,* 127 Vt. 222, 245 A.2d 561, the attorney general requested the professional conduct committee to reconsider. The committee declined to reopen the matter for the reason that the case had been given careful consideration in the first instance and further review seemed unnecessary.

The presentment in the present proceedings followed. It is based on the contention that the respondent's conviction as a misdemeanant according to federal statute constitutes, of itself, unprofessional conduct. The question presented is whether the adjudication of the respondent's guilt in the federal prosecution establishes misconduct inconsistent with the standards of conduct required of an attorney of this Court.

The area of the respondent's transgressions is primarily political. But an attorney cannot entirely insulate his conduct from his posture as a member of the bar nor from the professional standards

which attach to the privilege of serving as an officer of the court. Apart from petty offenses and subtle lapses from strict observance of the letter of the law, a lawyer bears a burden of responsibility that is uncommon to the ordinary citizen. *In re Calhoun, supra,* 245 A.2d at 560.

The lawyer's duty in this respect, and the obligation of the courts to enforce it, does not begin or end with the attorney-client relationship. Neither is it confined to causes which are not directly connected with his professional practice.

As a competent counsellor in the law, the respondent is held to understand the purpose of the statute and the corruptive influence it was designed to eliminate. He was bound to keep its command. Failure to do so violated the letter and spirit of accepted standards of professional conduct.

"No client, corporate or individual, however powerful, nor any cause, civil or political, however important, is entitled to receive, nor should any lawyer render any service or advice involving disloyalty to the law, whose ministers we are—." Canon 32, Canons of Professional Ethics, American Bar Association, adopted by the Vermont Bar Association, 1949. See also, Preliminary Draft of Proposed Code of Professional Responsibility, 1-102, January. 1969.

■ It is entirely clear that the respondent gained no personal advantage in undertaking to aid his candidate for the postmaster of St. Johnsbury. Quite the contrary, Handy's appointment failed and the respondent returned the $3,000 before the criminal investigation was begun. And, as the professional conduct committee has observed, retribution has been harsh and continuing. These considerations have tempered the sanction which we impose. But they cannot palliate the offense of knowingly engaging in conduct which the law condemns in the interest of safeguarding the federal appointive process.

*Judgment that the respondent Frederick J. Fayette, is suspended from the office of attorney at law and solicitor in chancery for the period of four months beginning April 15, 1969 and ending August 15, 1969.*

**Smith, J.,** did not sit.